UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL FRIAS-ESTRADA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TREK RETAIL CORPORATION,<br><br>　　　　Defendant. | Case No. 20-cv-07471-RS<br><br>**ORDER GRANTING MOTION TO REMAND** |

## I. INTRODUCTION

This putative class action arises out of Defendant Trek Retail Corporation ("Trek")'s alleged wage and hour violations. Plaintiff Raul Frias-Estrada originally filed an eight-count complaint in the Contra Costa Superior Court. Defendant quickly removed the case contending it was apparent on the face of the complaint that the amount in controversy exceeded $5 million, the jurisdictional requirement set forth by the Class Action Fairness Act ("CAFA"). Plaintiff now moves to remand the action and challenges the assumptions underlying Trek's Notice of Removal and the attached declarations supporting the amount in controversy calculation. For the reasons set forth below, the motion is granted.

## II. BACKGROUND

Plaintiff was employed by Trek as an hourly, non-exempt employee from December 2019 to June 2020. He was usually scheduled to work at least five days per week for eight hours a day, but alleges he often worked more. Plaintiff asserts he was routinely not paid minimum wages, straight time wages, and overtime wages. According to Plaintiff, Defendant required, pressured,

and encouraged employees to continue working through meal and rest periods or denied them permission to take a meal or rest, and he was not informed of his right to a second meal after ten hours of work. Plaintiff also complains that Defendant failed to furnish accurate, itemized wage statements and, at termination, did not pay all final wages owed. Lastly, Plaintiff contends that Defendant required workers to pay, out-of-pocket and without indemnification, for necessary expenses such as work attire, gas mileage, and work-related use of personal phones.

On September 22, 2020, Plaintiff filed a complaint in Contra Costa Superior Court asserting wage and hour and unfair competition causes of action. As requested relief, Plaintiff seeks unpaid straight and overtime wages, unpaid meal and rest period premium wages, statutory wage penalties, waiting time penalties, the reimbursement of business expenses, and restitution of unpaid wages pursuant to the UCL, as well as pre-judgment interest, liquidated damages, and attorneys' fees. He purports to bring the claims on behalf of himself and a class consisting of "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." Complaint ("Compl.") ¶ 25.

While the state court complaint did not articulate the particular sum Plaintiff and the class sought to recover, Defendant asserted in its Notice of Removal that it was "facially apparent" from the Complaint, given the approximate class size, that the amount in controversy requirement was satisfied. In support of that contention, Trek attached a declaration executed by David Durfey, Defendant's Director of Human Resources, North America, who declared that approximately 316 individuals were employed as hourly-paid or non-exempt employees during the relevant four-year period. In response to this motion, Durfey executed a more detailed declaration in which he asserts he is familiar with and has access to the relevant payroll records, employee history records, and personnel files. Together, these databases, he contends, allow him to determine employees' dates of employment, positions, and other wage information.

Durfey's second declaration adds meat to the bones of his previous projection. He estimates approximately $5,767,299.49 is in controversy. To arrive at that figure, he purportedly

analyzed employee information from September 22, 2016 through the date the declaration was executed, December 7, 2020 and declared the following to be true. First, he corrected his earlier estimate and clarified that only 282, rather than 316, individuals were employed as hourly-paid employees. Trek employed 238 qualifying individuals from 2016 through 2019. From January 1, 2020 through November 30, 2020, it employed 206.[1] The average pay rates, for the years 2016 through 2020 were, respectively: $15.93, $16.64, $16.40, $16.79, and $18.02. The average hourly rate of pay for the entire putative class is $17.47. On average, hourly employees worked 20.50, 24.51, 26.16, 21.90, and 25.66 hours per week in 2016 through 2020, respectively. Hourly employees in California worked a total of 12,727 work weeks from September 22, 2016 through December 31, 2020. Assuming the same number of employees in 2021 as 2020, hourly employees will work an additional 5,884 work weeks in 2021. Durfey does not explain how he determined the average pay rate in each year, the average hourly rate of pay for the entire class, the average hours worked per week, or the number of work weeks.

### III. LEGAL STANDARD

Under CAFA, 28 U.S.C. § 1332(d), federal courts have original jurisdiction over class actions where there are at least 100 class members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5 million. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). A class action that meets CAFA standards may be removed to federal court. 28 U.S.C. § 1441(a). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). The amount in controversy embraces "damages, costs of compliance with injunctions, attorneys' fees awarded under contract or fee shifting statutes" and "future attorney's fees recoverable by statute or contract." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). If it lacks

---

[1] It is unclear how Trek could have employed a *total* of 282 workers during the class period if it employed 238 employees from 2016 through 2019 and 206 individuals in 2020. Neither Trek nor Durfey ever explain why the calculation ends on November 30, 2020, a seemingly random date.

subject matter jurisdiction, the district court must remand the case to state court. 28 U.S.C. § 1447(c).

## IV. DISCUSSION

### A. Trek's Calculations

The only dispute here is whether CAFA's requirement that the amount in controversy exceed $5 million is met; Plaintiff does not dispute that minimal diversity exists. In order to determine the amount in controversy, courts first look to the complaint. *Ibarra*, 775 F.3d at 1197. The amount claimed by the plaintiff generally controls if made in good faith. *Id.* Where "damages are unstated in a complaint or, in the defendant's view are understated," however, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Id.*[2] "[M]ere speculation and conjecture" based on unreasonable assumptions is not enough. *Id.* Yet defendants may "rely on reasonable assumptions," though they "need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). However, a district court should only "weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own." *Harris*, 980 F.3d at 701.

To determine if a defendant has met its burden, a court may consider "evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence." *Ibarra*, 775 F.3d at 1197 (internal quotations omitted). Supplemental, post-removal submissions

---

[2] Though Trek asserts in its Notice of Removal that it is "facially apparent" that the amount in controversy requirement is met, in its opposition it presents standards predicated on an "unclear or ambiguous" amount in controversy. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). It therefore appears to agree that the preponderance standard applies.

are properly considered. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). "If the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

Trek's Notice of Removal does not come close to showing that the requisite CAFA amount was in controversy. It only lists various claims for relief before ultimately concluding that damages arising from them "would increase the total amount in controversy." Notice of Removal ¶¶ 17, 19-21. The first Durfey declaration is similarly vague – he states only that there are approximately 316 employees fitting the class description.[3] He does not provide details regarding how many hours each putative class member worked, the frequency at which each member would be entitled to breaks, or the expected violation rate. While Durfey later executed a second, more detailed declaration in response to this motion, it does not supply the necessary support to shoulder Defendant's burden, as explained below.

To arrive at its specific amount in controversy estimate, Trek relies on Durfey's second declaration and aggregates the potential recovery over Plaintiff's meal period, rest period, waiting time, wage statement, minimum and overtime wage, reimbursement of necessary business expense claims and adds the projected attorneys' fees. Each calculation is reproduced below.

### 1. Meal and Rest Period Claims

Plaintiff's third and fourth causes of action allege he and the class did not receive their first daily meal break before their sixth hour of work and did not receive a ten-minute rest break every four hours. Assuming one meal period violation every five shifts (a 20% violation rate) and that each employee is owed a premium at the rate of one hour of pay for each violation, Trek estimates a potential recovery of $325,134.17. It arrives at this number by multiplying the total work weeks from September 22, 2016 to December 31, 2020 (12,727) by the average hourly rate of pay ($17.47) for a total of $222,340.69 in penalties. It then assumes the number of non-exempt

---

[3] As Plaintiff points out, this would mean each putative class member would be expected to recover at least $15,800.

employees will remain the same in 2021, meaning Trek employees will work an additional 5,884 work weeks in 2021 at the same hourly rate for an additional $102,793.48 in penalties. Trek asserts the exact same calculation applies to rest period violations. Together, the rest break and meal period claims put $650,268.34 in controversy.

### 2. Waiting Time Claim

Plaintiff's fifth cause of action contends Trek failed to pay former employees all wages owed to them at termination. The statutory penalty provides for the payment of an employee's daily wages at a regular hourly rate for each day they were not paid, up to a maximum of thirty days. During the relevant time period, 135 putative class members separated from Trek. Assuming each of those employees is entitled to the maximum amount of waiting time penalties, Trek estimates a potential recovery of $343,437.15. To arrive at this figure, Trek provided a year by year analysis. It multiplied the average hourly rate in each of the years 2016, 2017, 2018, 2019 and 2020 by the average number of hours worked per day by thirty days (the statutory maximum waiting time) by the number of employees who left Trek in each year.[4]

### 3. Wage Statement Claim

Plaintiff's sixth cause of action alleges Trek did not comply with itemized wage statement provisions in violation of California Labor Code § 226(e). Pursuant to that section, an employee who is injured as a result of such a violation is entitled to recover the greater of her actual damages or $50 for the initial pay period and $100 for each subsequent offending period, up to $4,000 per employee in addition to costs and attorneys' fees.

From September 22, 2016 to November 30, 2020, Trek contends it employed at least 282 non-exempt employees in California. Those employees received 26, biweekly wage statements per year. Assuming every wage statement was unlawful (a 100% violation rate) because Plaintiff

---

[4] Both Trek and Durfey mistakenly use $15.00 as the hourly rate for 2016 even though Durfey in other parts of his declaration estimates the hourly rate to be $15.93. They also underestimate the average hours worked per day in 2016. While in all the other years they divide the average hours per week by five to arrive at the average hours worked per day, in 2016 they divide the average hours per week by over nine.

"alleges a list of potential deficiencies in the wage statements," Trek estimates a potential recovery of $1,128,000.00. Opposition ("Opp.") at 16. It arrives at this number by multiplying the maximum penalty ($4,000) by the number of employees (282).

### 4. Minimum Wage and Overtime Claims

Plaintiff's first cause of action contends Trek failed to pay its employees at least the minimum wage. Trek characterizes the complaint as "devoid of factual allegations" related to the minimum wage claim and on that basis asserts it is difficult to estimate an amount in controversy. Opp. at 17. Nonetheless, purportedly based on Plaintiff's meal and rest break allegations, Trek assumes two hours of unpaid minimum wages per week. It consequently estimates a potential recovery of $447,291.40. It arrives at this number by multiplying the "average minimum wage" ($11.10)[5] by 12,727 work weeks and then adding the sum of the 5,884 weeks that will be worked in 2021 multiplied by the "applicable" minimum wage of $14.00. Trek further asserts that liquidated damages related to Plaintiff's minimum wage claim doubles the potential damages for a total of $894,582.80.

Plaintiff's second cause of action asserts Trek failed to pay overtime to employees who worked over eight hours a day, forty hours a week, for a seventh consecutive day, in excess of twelve hours in a day or over eight hours on the seventh consecutive day of a work week.[6] Trek assumes 2.5 hours of unpaid overtime per week and estimates a potential recovery of $1,298,751.30. It arrives at that figure by undertaking a year-by-year analysis. Trek multiplies its calculated hourly rate (varying by year) by 1.5, then by 2.5 hours, then by 52 weeks of the year,

---

[5] It is unclear to what Trek refers when it invokes the "average minimum wage" – the average of a city? A state? Averaged over the relevant four years? It is similarly unclear why the rate jumps to $14.00 an hour in 2021.

[6] In its calculations, Trek does not differentiate between different types of overtime, but California Labor Code § 510 provides that work in excess of eight hours a day, forty hours a week, and the first eight hours on the seventh consecutive day "shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Work in excess of twelve hours in one day or after the eighth hour of work on the seventh consecutive day must be compensated at twice the employee's regular rate of pay.

ORDER GRANTING MOTION TO REMAND
CASE NO. 20-cv-07471-RS

and lastly by the number of employees Trek employed each year from 2016 through 2020.

### 5. Reimbursement of Necessary Business Expenditures Claim

Plaintiff's seventh cause of action contends Trek failed to reimburse employees for substantial necessary expenses and losses incurred during the course of employment in violation of California Labor Code § 2802. He seeks to recover those expenses and losses. Again, Trek emphasizes that the lack of factual specificity in the complaint makes calculation difficult, but it assumes each employee incurred expenditures of $600.00 per year, or $50.00 per month. It estimates a potential recovery of $298,800 by multiplying $600.00 by the number of employees working at Trek in 2016 through 2020.

### 6. Plaintiff's Claim for Attorneys' Fees

Trek assumes Plaintiff's counsel will seek an award of 25% of the total recovery. It totals the calculated damages up to this point, $4,613,839.59, and divides by four for an estimated award of $1,153,459.90.

### B. Trek Fails to Carry its Burden

Plaintiff challenges these tabulations on a variety of grounds. First, he argues Durfey's second declaration is not competent evidence and challenges a variety of Trek's assumptions. Second, he contends Trek's calculations embrace damages outside the proper time period. Third, he asserts Trek employs an incorrect statute of limitations to calculate his waiting time and wage statement claims. Lastly, he argues Trek's calculation of his overtime claim and attorneys' fees are inflated.

Durfey's second declaration is completely unreliable and cannot provide the basis for Trek's removal. It contains a multitude of unfounded assumptions and unexplained mathematical theories. Plaintiff correctly points out that Durfey does not provide a definition of a work week nor does he describe his process for determining the number of employees, applicable pay rate, the $17.47 average hourly rate for the putative class, or number of hours worked per week.

Moreover, the 20% violation rates Trek uses to calculate the meal and rest period damages are simply "pulled from thin air" without any "reasonable ground underlying them." *See Ibarra*,

775 F.3d at 1199. Trek insists it is entitled to assume a 100% violation rate because "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernably smaller than 100%[.]" *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007). Nonetheless, it "conservatively assumes" a 20% violation rate on the theory that other district courts "regularly approve" that rate when plaintiffs allege uniform policies resulting in violations. *See, e.g. Long v. Destination Maternity Corp.*, 2016 U.S. Dist. LEXIS 54323, at *24-25 (S.D. Cal. April 21, 2016) (collecting cases); Opp. at 12. In *Long*, the court considered it reasonable to estimate the plaintiff was alleging at least one hour of unpaid overtime per putative class member *per week*. *Id.* Trek extrapolates this principle to mean that assuming one violation every *five shifts* is per se reasonable in cases where plaintiffs allege uniform policies but do not provide more factual detail. The Ninth Circuit has, however, found such an assumption unreasonable where, as here, there was no proof the putative class members worked "sufficient shifts . . . to qualify them for meal and rest periods." *Harris*, 980 F.3d at 703. Because Durfey posits that Trek employees worked on average far less than five hours each work day – 4.1, 4.9, 5.23, 4.27, and 5.13 hours per day in each of the years 2016 through 2020, respectively – it is unreasonable to assume one violation every five shifts.

In that same vein, it is unreasonable to assume that each employee was un- or underpaid for 4.5 hours of work a week. Durfey's calculations assume two hours of unpaid minimum wages and 2.5 hours of unpaid overtime wages per week per employee. Elsewhere, though, he assumes employees work on average approximately 20 to 25 hours per week. Divided over a five-day work week, as alleged above, each employee could work only between 4 to 5.5 hours a day. Plaintiff is not alleging, and it would be unreasonable to assume, that nearly every hour worked went unpaid. It is similarly arbitrary of Trek to assume class members were owed $50 per month in unreimbursed business expenses. It provides absolutely no basis for this estimation – it is pulled out of even thinner air than the 20% violation rate.

Even assuming Durfey's second declaration is competent evidence, he includes in his assessment damages from time periods not properly considered at this juncture. "For jurisdictional

purposes, [a court's] inquiry is limited to examining the case as of the time it was filed in state court." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (internal citation omitted). It additionally stands to reason that courts may not consider damages arising from conduct that occurred before any putative class period is alleged to have begun. Plaintiff makes three arguments to this effect.

First, considering the proposed class is limited to those who worked for Trek on or after September 22, 2016, four years before the state court complaint was filed, any damages relying on conduct earlier in 2016 may not be considered.[7] Consequently, the weeks at issue in Trek's overtime calculation must be reduced from 52 to about 14 and the potential recovery from $34,169.85 to about $9,200.28.[8] Second, Durfey's estimation of the number of work weeks (12,727), which underpins his meal period, rest period and minimum wage claim calculations improperly includes weeks worked up to December 31, 2020 even though the complaint was filed on September 22, 2020. The damages arising from each of those claims must thus be reduced by approximately 14 weeks.[9] He has incorrectly evaluated the number of total, and terminated, employees based on the same expanded, faulty timeline. Third, Trek improperly adds to a variety of its tabulations prospective damages related to 2021. Specifically, it attributes $102,793.48 to 2021 meal break violations, $102,793.48 to 2021 rest break violations, $164,752.00 to 2021 minimum wage penalties, and $164,752.00 to liquidated damages related to the 2021 minimum wage penalties. Because the inquiry is limited to assessing damages up to September 22, 2020, the aggregation of these 2021 damages ($535,090.96) must be removed from Trek's calculated total.

---

[7] Plaintiff points out that his waiting time and wage statement claims are subject to even narrower three- and one-year statute of limitations, respectively. Trek's waiting time calculations that include 2016 and large parts of 2017 are thus too high.

[8] As Plaintiff notes elsewhere, it also is unreasonable to assume throughout the overtime calculations that employees work all 52 weeks of the year. Correcting for this faulty assumption further reduces the potential overtime recovery.

[9] Plaintiffs allege those calculations need only be reduced by 10 weeks, but there are 14 weeks and two days between September 22, 2020 and December 31, 2020.

These adjustments, even aside from the effects of the reduced work weeks, significantly reduce the amount in controversy, before attorneys' fees, from $4,613,839.59 to $4,053,779.06.

Plaintiff also accuses Trek of overinflating its overtime calculations. Though it is indeed suspicious that Trek calculates the overtime claim by multiplying the overtime rate by the assumed 2.5 hours of unpaid overtime by 52 weeks by the average pay rate in a given year rather than by using work weeks like it does in its other claims, Plaintiff offers no reason to believe one method is superior to the other. It is of note, however, that a calculation using work weeks results in approximately $464,973.71 less in damages.[10]

Lastly, though Plaintiff does not dispute attorneys' fees are properly considered in the removal context, he argues Trek has inflated them. First, he points out that there is no rule setting prospective attorneys' fees at 25%. Indeed, the Ninth Circuit declined to extend from the class action settlement context a per se rule that "the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery" and noted that such fees are "limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Fritsch*, 899 F.3d at 796. Of course, the court acknowledged a percentage approach may sometimes be appropriate. *Id.* at 796 n.6. Here, Trek explicitly, though improperly, relies on the class action settlement context 25% benchmark the Ninth Circuit disavowed. In response, Plaintiff rightly notes that no per se rule exists and that the California Labor Code's fee shifting provisions does not apply to meal and rest period claims. *See Kirby v. Immoos Fire Prot., Inc.*, 53 Cal.4th 1244, 1255 (2012). Still, even assuming that Trek's 25% benchmark assumption is properly applied in this case, it is clear that the recoverable attorneys' fees are meaningfully less than the projected $1,153,459.90 considering all the downward adjustments discussed above.

Plaintiff has identified so many flaws and unexplained assumptions in Durfey's second

---

[10] Plaintiff also contends that Trek's reimbursement claim should rely on work weeks. Without any reasoning to support the idea that Plaintiff's method is superior, however, there is no reason to discount Trek's calculation. Still, it is important to note once more that the actual $50 per month figure appears to be completely random.

ORDER GRANTING MOTION TO REMAND
CASE NO. 20-cv-07471-RS

11

declaration that Trek's "chain of reasoning and its underlying assumptions" cannot be considered reasonable. *See LaCross*, 774 F.3d at 1201. Trek has thus not carried its burden, so the action must be remanded.

## V. CONCLUSION

For the reasons set forth above, the motion is granted. This action is hereby remanded to the Superior Court of Contra Costa.

**IT IS SO ORDERED**.

Dated: April 19, 2021

RICHARD SEEBORG
Chief United States District Judge